## Lacrosse's License

*John Pipa*, for appellant.

*Robert M. Fortney*, for Liquor Control Board.

CUMMINGS, J., May 21, 1936.—Some time in September 1935, the record not showing the date, Antonio Lacrosse filed an application with the Pennsylvania Liquor Control Board for a distributor's license for the premises located in the rear of 535 Chestnut Street, Kulpmont, Pa. On September 30, 1935, the license was refused, from which refusal an appeal was taken to this court in accordance with the provisions of section 7 of the Act of July 18, 1935, P. L. 1217. A hearing was had and testimony taken.

The testimony discloses the following facts: At the time of the filing of the application for a distributor's license by Antonio Lacrosse, he was the possessor of a

county beer distributor's license, conducting his business at the rear of his residence, 535 Chestnut Street, Kulpmont, Pa. In his application for a license is the following question: "Have any of the above ever been arrested, indicted or convicted of violation of State or National Liquor Laws?" His answer to this question was "No." The testimony discloses that, some time in 1933 or 1934, applicant had been arrested in Snyder County on suspicion of being connected with the operation of a still. The prosecution, however, was nol prossed. Applicant stated that, while his answer was "No", he was under the impression that it meant convicted.

The testimony further discloses that on May 4, 1935, the applicant was injured in an automobile accident and taken to a hospital, where he remained for a period of about four months. While in the hospital, a renewal application for his county distributor's license was signed and executed by him and the license was issued, his driver lifting the same and conducting the business for him. After the applicant left the hospital he was confined to his bed at his home for about four weeks, during which time the State inspector called at his home, made an investigation of the premises and, failing to see his county distributor's license, called applicant's attention to it. The applicant advised the inspector that his driver had it, sent for the driver, procured the license and tacked it up on the wall of his home. His home was considered his office, the business being conducted in the garage in the rear. He kept his books with relation to the business in his home.

As the record does not disclose them, we can but presume that the reasons why his distributor's license was refused by the State Liquor Control Board were, first, his answer to the question in the application above indicated; second, failure to find his county beer distributor's license posted in a conspicuous place, and, third, the keeping of his books and records in his home instead of in the building for which the license was granted.

Under ordinary circumstances we would agree with the board in the refusal of this license. The first reason is highly technical. Any ordinary citizen might make the same answer, not intending in the least to deceive or mislead, and when we consider the facts with relation to the applicant, who was a naturalized citizen of little or no education, that his application was filled out by a justice of the peace and taken to the hospital to him, where it was signed and executed no doubt without reading on his part, we cannot, under the circumstances, conclude there was any intention on his part to falsify or mislead. As to the second reason, applicant was confined to the hospital at the time the license was issued by the Treasurer of Northumberland County, his driver lifting it. After being discharged from the institution he was confined to his bed at his home for a period of four weeks. No doubt he gave little thought to his business or the manner in which it was being conducted during this time and, surely, should not be charged with intentionally failing to have his license posted as required by law. As soon as his attention was called to it by the inspector, the license was secured and posted, not in the garage where the business was conducted, but in his house or home, which he considered his office.

While we do not desire to be understood as holding that the posting of the license in a home or office not licensed is a compliance with the law, under the circumstances of this case we do not feel we would be justified in refusing this license.

There is no testimony that applicant failed to keep records; the testimony is quite to the contrary. The same were kept in his office at his home.

In addition to the above, the Liquor Control Board, insofar as this record discloses, failed to assign any reasons whatsoever in justification of its refusal to grant the license.

Under all the circumstances, we are of opinion that the State Liquor Control Board was in error in its refusal of this license.

And now, to wit, May 21, 1936, the Pennsylvania Liquor Control Board is hereby ordered and directed to issue to Antonio Lacrosse a distributor's license for the year 1936, upon the payment by him of the required license fee.

From Richard Henry Klein, Sunbury.